I just briefly recalling what I believe to be the salient facts, at least as it affects the current posture of the case. I think we've all, those of us who are not, read the Court of Appeals opinion a few times. The only thing that I wanted to clarify with respect to the prior opinion that the Court had issued is there was a footnote in the opinion, which did talk about there being, you know, we have the two rulings that we're going to be talking about today, and then these entries that came after the two rulings, and then the parts that are actually issued in this case. And the footnote seems to suggest that there are sort of unique groupings of parts. Six in the first ruling, six in the second ruling, ten after that, and then four parts that are issued in the current case. And the footnote seems to suggest that there are four unique groupings of products. And that's to some extent true, but it's not a complete characterization or accurate characterization of the facts, which is to say that those are the unique part numbers that were in each of the groups. But there's some overlap, as we're going to see as I get into my presentation, in the two pre-class rulings that we're contending constitute a treatment. This is a rather simple case, isn't it? To be honest, I believe yes. As far as C1 and 2 were redundant or not? Correct. And I probably will finish even before my allotted time, but I don't think this is a very difficult case. I tend to agree with you. In fact, the CIT below ruled, as I read the CIT decision, that there was a treatment, let's say, in the common sense of the word, but as a matter of statute or interpretation, it could not find that the two rulings constitute a treatment. Because to do so would render, according to the court below, C1 superfluous. And so the issue is, as I see it, whether that's correct or not. And as we tried to suggest in our briefs, finding that in this case that there are two rulings being issued one after the other does not render C1 superfluous because we would not be here today arguing the C2 issue had we only received one ruling. Under the court's precedent, in the last case, the bypass entries wouldn't count. We would be left essentially with one ruling that would have been issued to us, and we wouldn't be able to say there's a treatment because there was only one act by customs. A PRL always involves a treatment, doesn't it? I'm sorry? Doesn't it always involve a treatment? A PRL? It involves... I mean, I don't know much about customs, but as I read this stuff, it sounds like it would.  And that's to know whether a PRL always involves a treatment. Certainly in the government's brief, one thing that I... As I was rereading the brief on page 23, I believe, there was much noise in the brief about, well, the part numbers here are different among the PRLs, and the parts that came in later, they're all different. And the government said, which I think is telling, and I think it goes to your point, which is... I just want to quote here. Basically, if we wanted to have the same treatment of our parts, these other parts which are different, that were not covered by the earlier ones, if we wanted to have the same treatment, we should have gone to customs and told them, hey, there's some new parts here. So I think customs is treating, if we define a treatment as applying the law to a set of facts, is treating merchandise when it issues a PRL. But it's clear that we need multiple, let's say, treatments or multiple acts by customs for it to be a treatment. I wouldn't be arguing what we're arguing today, again, if we only had one PRL. Our complaint is the government here issued to Motorola, on two separate occasions, two decisions on merchandise that's agreed to be substantially identical, told us, put it in tariff A. And the reason I was trying to clarify the facts at the beginning are, it's not that there were separate part numbers. Yes, there were 12 unique part numbers, 6 and 6. But they told us the second time, the same three parts in the first PRL that were in the second PRL, put it in tariff A. And so that, to us, is what our treatment is. And we don't think that you render C1 superfluous or meaningless by finding where there's a multitude of rulings. If there were 100 rulings that would have been issued here, okay, unfortunately we only have two. But if there were 100, and now we'd be talking about merchandise that, again, is presumed to be substantially identical, and we'd all agree that it's substantially identical, that it wasn't covered by the first 100 rulings, at what point, how many hairs make up a beard? We only have two. Two is a beard. But it seems to me that there's no requirement of how many times customs has to act. It just has to be multiple times. But in this case, the decision, the headquarters' decision to change the classification didn't modify the earlier two PRLs, correct? The earlier two PRLs were not modified by the subsequent decision. Well... Because they're related to different products. Again, they were not... They may be substantially identical, but they're a different product. I can state definitively at the part number level that the ones that were issued in the headquarters' ruling were different part numbers, so they were not modified in that sense. And that's, frankly, why we didn't prevail on the C1 argument. They have to involve the same. Exactly. Under C1. Yes, but not under C2. Correct. And ironically, originally, when we were arguing the C1 issue, the government was arguing that the PRLs weren't even rulings. That's what they were trying to get out, one of the ways they were trying to get out from our C1 argument. We prevailed on the fact that they were one of the big rulings, but then lost on the C1 issue, because, well, that's different part numbers, different products. So under C2, again, our position is not... C2 can only apply when there's a multitude of things, a pattern. If you look at the definitions of treatment, we believe you have to have a pattern. And again, 2, 3, 100, I'm not sure what the magic number is, but we would submit that at least on this case, where we have two rulings with at least three part numbers that were in common between the two, there's a pattern of how they're treating Motorola's merchandise. But isn't it an easier read of the statute to say that C1 applies where you have a prior ruling, and C2 would apply if there hasn't been a ruling? I suppose it might be easier. It's maybe tempting to read it that way. I don't believe that's the correct way to read it. Obviously, self-serving of me to say I don't believe it to be correct, but the reason I... From a policy perspective, that doesn't seem to me to be the right way to interpret the statute either, because we're going to be left, ultimately, if that's how this case comes out, with a situation where rulings will only be covered under C1. I don't want to say everything else that's a little too broad, but other types of things will be covered by C2. If you have the fact pattern, for example, where you have a few rulings issued to an importer saying, classify your red, white, and blue T-shirts this way, and customs goes through and modifies, which they do regularly, they modify rulings, they issue a notice saying, okay, we're going to revoke or change the ruling in the red shirts and the blue shirts, but they inadvertently forget the white shirts, which can happen. So the ruling in the white shirts is going to stay out there. The importer's going to have to follow the new advice from customs, which is the red and the blue now go in this other tariff number, and your white ones, which they forgot to revoke. I think the importer would be hard-pressed to argue they should still classify the white ones under the ruling, but if the court's decision in this case winds up being rulings can only be covered by C1, the importer's going to be able to continuously classify their white T-shirts under the old ruling because it was never modified or revoked by the subsequent decision from customs, which doesn't make sense. The problem we have in working with the company is the government's answer throughout this case has been there are different partners that should have gone to get a new ruling from customs. The problem you have is, number one, rulings can be issued from New York, which is usually where people go to get a ruling, typically only from five partners at a time. So a client, someone like Motorola, would have multitudes of partners. By the time you go back to New York, five parts at a time, customs officials in New York say, I told you, this is just another red T-shirt. I've given you five rulings already, or two, or 100. Why are you coming to me on the 101st ruling? And the divisions that they're drawing on the part number level are very arbitrary. We showed in the court below how a partner can change something because it's a different manufacturer. The test at the end of this is substantial identity, and we've already decided that in this case, what's substantially identical. So I think from a policy perspective, there's going to be a big hole if the statute is interpreted that way, although it may be easy to interpret it that way. Because clearly there's a difference. We're not suggesting that every time customs modifies or revokes a ruling that there's a treatment. That's not what we're suggesting. And the government has also suggested in its brief, I think they've sort of mischaracterized our position. They say under Motorola's theory, in order to establish a treatment, an importer immediately has to obtain two rulings, each of which covers a product that the importer believes to be similar to the product covered by the other ruling, and both of the rulings conclude that the same tariff number applies to the groups of parts. Those aren't the facts here. Again, the two rulings that were issued, you have the same three part numbers that were common to both. It's not that the importer is saying, well, I think these parts are similar to these. We all agree that that issue's never been in dispute at the Nichols. I'd strike that it was in dispute originally, but at this point in litigation, all the Nichols assemblies are agreed to be substantially identical. And we're not trying to creatively patch together a series of rulings to say there's a treatment. There was a clear pattern here by customs on how a merchandise should be treated. On the issue of transactions, I also think the government's brief is trying to rewrite the statute, because to be sure under C2, we must have substantial identical transactions. So they're assessing multiple transactions, whatever that means. And as I read through the government's brief, they seem to be suggesting that transactions equates out to entries. And since here we're only talking about two rulings, and there are no entries, we can't have a C2 claim. And I don't think that's a correct reading either, because when you look, and we tried to cite this in our brief, at how a transaction is defined, in customs on regulations, they don't define the word transactions as equivalent to entries. And clearly, Congress didn't define it that way either. If they meant substantial identical entries, they could have easily said so, but they didn't. And then my final comment, I'll save the rest of my time after my final comment for rebuttal, is on the Chevron issue, which I think is looming out there. In the last go-round of this case at the court, the court did find the word treatment to be ambiguous,  must there be for there to be a treatment, and then customs had a regulation that specifically addressed that. The regulation that's at issue here, that the government has wanted to cite, and we tried to show that even if they do cite it, and it does apply, we would still satisfy it, was not at issue before the court last time, which is the 177.12 C1. And I'm going to save the rest of my four minutes or so for rebuttal. We will do that, Mr. Roland and Ms. Rubin. Thank you very much. Good morning. May it please the court. The only issue left in this case, despite all the other issues that Mr. Roland was talking about, is whether customs created a treatment of substantially identical transactions for purposes of Section 1625 C2, simply by issuing two pre-classification ruling letters on part numbers that don't overlap, except perhaps with three. And Mr. Roland has, at least five times during his argument, referred to three overlapping part numbers. I don't know where those part numbers overlap. That's never been in evidence. Those were never provided to the government for purposes of determining whether they're substantially identical to the part numbers in issue. I really don't know what three part numbers Mr. Roland is referring to, and it's not really even all that relevant, because Mr. Roland, as appellant, chose not to even put the lists of part numbers in the pre-classification ruling into the appendix in this case. You don't have copies of the pre-classification ruling letters, so you should disregard any statements with respect to three overlapping part numbers. They're not relevant to what's at issue here. As far as Mr. Roland's red, white, and blue t-shirt example, to the extent he's indicating that some of the part numbers here are simply a different color or a different supplier, it certainly would have been just as simple for Motorola to change the part number when the supplier's changed as to notify customs of that change. In fact, what you do have in the appendix here is the pre-importation review program guidelines, which specifically say, importers must report any new items they wish to pre-entry classify and any changes to items which have been pre-entry classified in order to keep the classifications current. But doesn't that end up becoming irrelevant because you have agreed that they're substantially identical? We agreed that the samples provided by Motorola, and there were only 12 samples, were substantially identical to four of the parts at issue. The pre-classification... But those are the ones we're talking about, right? No. Well, those are the ones that we've agreed are substantially identical, and it's very clear from our experts' report, from our original filings, that we're talking about substantial identity between 12 part numbers, six of which are classified on each of the... or the hypothetical classification is determined on each of the PRLs, and the four part numbers at issue. There are hundreds that we never looked at, but even if you assume that substantial identity exists between what's on each of the PRLs and the parts at issue, the four part numbers at issue, that doesn't win the day for Motorola. Motorola is still going to have to show that the mere issuance of a ruling is a transaction. Motorola is still going to have to show that... But it certainly had... If it wasn't a transaction itself on those PRLs, it affected transactions. No. I mean, they weren't just issued in a vacuum. Actually, all pre-entry rulings are, in essence, issued in a vacuum because they all relate at best to prospective transactions, which may never occur. So the PRLs... Then the PRLs ended up, to begin with, back, you know, whatever years they were, 93, 94, whatever they were, then two ended up applying to them because they affected the transactions. But of course, since you'd already issued a ruling, there wasn't any point in issuing another one or doing a notice and comment. I'm not sure I follow what you're saying. PRLs provide customs determinations regarding how specific part numbers will be classified if and when those parts are actually ever entered. And since the rulings relate only to prospective transactions, the determinations provided in the pre-class rulings like those in any pre-entry ruling have no effect until the merchandise they cover is actually imported. But then what is the point of them in terms of using them for any future transactions? Because the presumption is that when a company goes through the process of getting a pre-classification ruling, that they're actually going to enter the merchandise. There's been no demonstration that any part number on either of the PRLs was ever actually imported. If it had been, then we agree without question that customs would have had to classify those specific part numbers in accordance with the pre-classification ruling letter. And if they didn't, that would have had to be modified under 1625. But then you're saying you can never use the substantially identical transaction for anything that deviates... that even though you agree it's substantially identical, you always have to go get a PRL even on something that is, if it isn't the identical transaction. I think customs would be overwhelmed. Customs... The pre-classification ruling... pre-importation program is unique in that it really... the rulings issued pursuant to that really contain primarily a list of part numbers and classifications. And it's made very clear to anybody participating in that that the ruling... that those specific rulings only relate to those specific part numbers. And that the importer, if they want to modify... if they change a part number, has to notify customs so that there can be an ongoing list of pre-entry classified merchandise. And Motorola's just making a lot of noise about how everything is the same, that they're just a question of red versus blue. No evidence was ever supplied. And, in fact, there were significant differences between the... what we would also... what we would consider to be substantially identical. I mean, there wasn't just a question of this part is from one supplier, this part was identical but from another supplier. There were differences in the technicalities or the physical nature of the parts. But our expert said, in the world of flexible integrated circuit assemblies... flexible circuit assemblies, we would consider these to be substantially identical. So we actually gave a concession that these... You can't take it back now, so... No, no, no, but for the ones that were actually reviewed by our expert. Which is only 12 parts out of hundreds. And I'm not even focusing. I should really move on because I'm not really focusing on the substantially identical nature of this part versus this part. The truth of the matter is the issuance of a ruling, or the issuance of two rulings, is not a transaction under 1625 C.2. And the reason is because... 1625 C.2, despite what Motorola has argued, really refers to transactions, meaning activities related to actual entries. And the way you know that is because, as in your California industrial case, when you referred back to the regulations in effect at the time that 1625 C.2 was adopted, you cited with particular approval, or you gave particular note to, that former section 19 CFR 177.9E, that's been repealed, but in footnote 14 of the California industrial decision, you indicated that was the basis for 1625 C. In that regulation, it details the types of evidence that an importer needs to demonstrate to establish a treatment of substantially identical transactions. And among the evidence that the person claiming the treatment has to show are the entry number or other customs assigned number, the quantity and value of merchandise covered by each transaction, the ports of entry, and the dates of final action by customs. The current regulation, 177.12 C.1 IV, carries that through. So clearly by asking for the quantity value of merchandise covered by the transaction, the identification of entry numbers, the ports of entry, the quantity, we're not talking about the issuance of a ruling. We're talking about actual importations of merchandise that are transactions. Customs is in the business of processing goods. They classify, they liquidate, they appraise. To say that what's essentially a hypothetical determination until there's an actual entry can constitute a treatment so that actual entries of merchandise have to be treated. It's very confusing what they're arguing here. And I like that Mr. Roll admitted that they can only point to what they call transactions here. I don't know that that's a pattern, but it doesn't matter because it's not a transaction that would give rise to a treatment. I know I'm a little confusing because I find Motorola's arguments very confusing because they're illogical. They violate the regulations. They go against prior decisions. They don't consider the regulations in effect and what evidence they needed to show to establish a treatment. Other than that, they were good arguments. Other than that, yeah. I didn't notice any typos. There's also another regulation that was discussed by both parties, and that's 17712C1i, and that's the regulation that discusses when a treatment may be found. There's also 2i, which this court previously appointed Chevron deference to. But focusing on the preceding regulation, there's three points that need to be established in order to show that there's a treatment. A treatment may be found if a customs officer made an actual determination regarding the facts and issues involved in the claimed treatment. We can see that that happened here with respect to the PRLs. Second is that the customs officer making the determination had the authority to do so. We don't dispute that at this point, that the PRLs were in fact issued by people authorized to do that. But there's a third prong of this test, and I'm going to quote this directly so there's no misunderstanding. Over a two-year period immediately preceding the claim of treatment, customs consistently applied that determination on a national basis as reflected in liquidations of entries or reconciliations or other customs actions with respect to all or substantially all of that person's customs transactions involving materially identical facts and issues. Motorola presents two alternative arguments regarding this third prong. First, in its initial brief, Motorola argues that the determinations presented in the PRLs were applied to over 900 bypass entries that it made between 1995 and 1997. The second argument, which is made only in Motorola's reply, is that the issuance of the PRLs themselves constitute, quote, other customs actions that support its treatment claim. Motorola's first argument can be dismissed very quickly because not only did Motorola's entries encompass part numbers that were not identified on either PRL, so that Motorola was not entitled to rely on the PRLs in making those entries or apply the PRLs in making those entries, but 19 CFR 177 C1 2i, which you previously afforded deference under Chevron, prohibits consideration of bypass entries for any reason for establishing a treatment. So moving on to Motorola's alternative argument, to accept Motorola's position would require you to find that a pre-classification ruling constitutes a customs determination and that the issuance of that ruling constitutes an application of that determination. Well, to find that, a treatment would be established every time customs engages in the activity of issuing a ruling because every ruling constitutes a determination. But even if you could find that the mere act of issuing a ruling constitutes an application of the determination in that ruling, Motorola would still not prevail because, as I read, customs only looks back two years from the claim of treatment to determine whether there have been substantially identical transactions, and here the claim of treatment was made in 1997. The PRLs were issued in 92 and 94. So under the regulations, even if Motorola could somehow finagle its way into saying that a PRL is a substantially identical transaction, the claim of treatment came too late. Besides that, Motorola just looks to the three words, other customs actions, without looking to the rest of that phrase, which is other customs actions with respect to all or substantially all of that person's customs transactions involving materially identical facts and issues. The phrase transaction shows up here, not prospective transactions. PRLs don't deal with prospective activities. They deal with prospective activities. They don't deal with activities that have occurred. And so in my seven seconds that are left, you should affirm the decision of the CIT because 1670.5C2 applies to treatments, not to rulings. The only thing at issue here are rulings, and none of Motorola's arguments make sense for the reasons provided in our brief. Thank you. Thank you, Ms. Rubin. Mr. Rohl has about four minutes. Thank you. I wish I had more, but I'll try to keep it to four minutes. On the issue of the part numbers, and there not being any information about the similarity of the part numbers, while I admit that our brief is not a model of clarity in pulling this issue out and presenting it before you, I would first admit that even if they were all separate unique part numbers, we should still prevail. This extra fact I'm trying to bring to the Court's attention here, I think bolsters our case. But it is in the record of this case. For example, if you look at the prior decision at the footnote where the part numbers are listed out, and you look at the joint appendix that's before the Court today, it has the list of the shipments that came in. And contrary to Ms. Rubin's position that there was no evidence, for example, that Ms. Rowe was saying that the part numbers, we don't know that they're the same, or what the three part numbers are, if you compare the part numbers that were issued in the two PRLs, and you look in the joint appendix, there's a column on some of those pages that lists out part numbers, you'll see that they're the same part numbers. And as far as the three overlapping part numbers, again, the two PRLs, it's true, they're not in the joint appendix, but they are in the appendix for the prior decision, and a simple perusal of that will allow you to see the three part numbers that are in common, and specifically, if the Court's interested, they're on page 683 of the prior joint appendix, you can see that. But moving on to some of the other issues that were discussed, the government has suggested, well, we only have 12 part numbers here, there are many others, but we only can talk about these 12 part numbers. Again, it goes back to how many hairs make up a beard. To me, 12 is enough, even if we say there are no other part numbers, and we're just talking about six, and then six part numbers, to me that should be enough to establish a treatment. If it's not, I'm not sure what the magical number is. In fact, it's telling in the last part of their discussion about the regulation and how we couldn't meet it because the rulings were issued in 92, 94, and then the claim to treatment came in 97, and therefore it's outside the two-year period that's in the regulation. That's one of the problems among several with the regulation, and why it shouldn't be giving deference, because it's not a reasonable interpretation. The only reason we waited three years to make the claim is because customs was following it for three years after the ruling. It wasn't until afterwards, three years down the road, that they changed the position. So if there's some arbitrary line of, well, two years is the time period in which you have to show the prior treatment, we can never show that in this case. That's correct. But the regulation is arbitrary. The one thing, I guess, in closing, I would like to leave the court with, as far as customs being overwhelmed and going to Judge Buckle's account about if we were to go in on every part number, A, I believe that that is correct, because the moral of the story for me would be as an attorney, every time I counsel one of my clients,   would be as an attorney, every time I counsel one of my clients, every time we have a part number, we're going to customs. Every time, no matter what the difference, red, blue, green, T-shirt, or if it's a whole different technical thing, we're always going to customs, and it would overwhelm customs in New York. And number two, there's a reason. What we're finding in the litigation and the decisions below, there was an ICP case where customs had issued a ruling to another importer, for example, regarding the classification of its merchandise, and customs in that case was trying to get out from under the ruling, saying, well, that product came from Israel, I believe were the facts, or from country A, and your product mission is coming from country B. And there's a tariff classification, where the origin has nothing to do with the ruling, but the principle of the classification, where it's coming from doesn't matter what the duty rate is, or I should say what the tariff number is. So to read things on such a narrow part number basis, customs is doing it, of course, on purpose, because it's trying to get out from under the statute that customs created when it passed the Mott Act to give importers more certainty and transparency in the process. And that's why we're here today. Thank you very much. Thank you, Mr. Rowe. We'll take the case under advisement and give it full treatment.